ROB BONTA
Attorney General of California
SARAH E. MORRISON, SBN 143459
Supervising Deputy Attorney General
DONALD ROBINSON, SBN 72402
KATE M. HAMMOND, SBN 293433
Deputy Attorneys General
300 South Spring Street
Los Angeles, CA 90013
Telephone: (213) 269-6531
Fax: (916) 731-2128
Email: kate.hammond@doj.ca.gov

*Attorneys for Plaintiffs*
*Department of Toxic Substances Control*
*and the Toxic Substances Control Account*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT, <br><br> Plaintiffs, <br><br> v. <br><br> CHEVRON ORONITE COMPANY LLC, et al., <br><br> Defendants. | Case No. 2:21-cv-1737-DJC-JDP <br><br> **FIRST AMENDED COMPLAINT FOR RECOVERY OF RESPONSE COSTS and DECLARATORY RELIEF (42 U.S.C. §§ 9601 et seq.)** <br><br> Courtroom: 10 – 13th Floor <br> Judge: Hon. Daniel J. Calabretta <br> Trial Date: None Set <br> Action Filed: September 24, 2021 |

1

Plaintiffs, the California Department of Toxic Substances Control ("DTSC") and the Toxic Substances Control Account (collectively referred to herein as "Plaintiffs") allege as follows:

**STATEMENT OF THE CASE**

1. This is a civil action brought by Plaintiffs against Chevron Oronite Company LLC, Shell USA, Inc. f/k/a Shell Oil Company, Atlantic Richfield Company, Bayer CropScience, Inc., The Dow Chemical Company, Exxon Mobil Corporation, ExxonMobil Oil Corporation, ExxonMobil Pipeline Company LLC, Ford Motor Company, Georgia-Pacific LLC, HP Inc., Mobil Exploration and Producing North America Inc., Mobil Producing Texas & New Mexico Inc., Pacific Gas and Electric Company, The Proctor & Gamble Manufacturing Company, Texaco Downstream Properties Inc., and Union Oil Company of California (each individually referred to herein as a "Defendant" and collectively referred to herein as the "Defendants") under sections 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a), for the recovery of unreimbursed response costs that Plaintiffs have incurred, and interest on such response costs, in connection with releases and threatened releases of hazardous substances at, beneath, above, and/or from the Montezuma Hills landfill ("Montezuma Hills"), a closed hazardous waste treatment and disposal landfill located in Solano County, California.

2. Plaintiffs further make a claim for declaratory relief, under 28 U.S.C. § 2201 and section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), for a declaratory judgment that each Defendant is jointly and severally liable to Plaintiffs for the response costs Plaintiffs have incurred, and for any further response costs Plaintiffs incur in the future as a result of any release or threatened release of a "hazardous substance," as defined in CERCLA section 101(14), 42 U.S.C. § 9601(14) at Montezuma Hills.

3. Montezuma Hills was operated as a hazardous and solid waste landfill until it ceased accepting waste in or about April 1986. Montezuma Hills, and the horizontal and vertical extent of contamination caused by the releases and threatened releases of hazardous substances at and from Montezuma Hills, is a "facility," within the meaning of sections 101(9)(A) and 101(9)(B), of CERCLA, 42 U.S.C. §§ 9601(9)(A), 9601(9)(B).

## JURISDICTION AND VENUE

4. The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and section 113(b) of CERCLA, 42 U.S.C. § 9613(b).

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because the releases and threatened releases of hazardous substances that are at issue occurred in this judicial district.

## PLAINTIFFS

6. DTSC is a public agency of the State of California, organized and existing under California Health and Safety Code sections 58009 and 58010. DTSC has the authority to protect California's people and environment from the harmful effects of toxic substances by restoring contaminated resources, enforcing hazardous waste laws, reducing hazardous waste generation, and encouraging the manufacture of chemically safer products. *See, e.g.*, Cal. Health & Safety Code §§ 25100-25259, §§ 25300-25359.45, and §§ 58009-58010. DTSC has authority under state law to determine whether there has been a release and/or threatened release of a hazardous substance and to respond to releases and/or threatened releases of a hazardous substance.

7. The Toxic Substances Control Account is an account within the State of California General Fund. California Health and Safety Code section 25173.6 establishes the account and the Director of DTSC administers the account. Under California Health and Safety Code section 25361(a), the account shall be a party in any action for the recovery of response costs or expenditures under Chapter 6.8 of Division 20 of the California Health and Safety Code that were incurred by DTSC from the account.

## DEFENDANTS

8. Defendant CHEVRON ORONITE COMPANY LLC is a Delaware limited liability company. DTSC is informed and believes, and based on such information and belief alleges, that Defendant CHEVRON ORONITE COMPANY LLC is the successor-in-interest to Chevron Chemical Company, which DTSC is informed and believes, and based on such information and belief alleges "arranged for disposal or treatment … of hazardous substances," as set forth in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), at Montezuma Hills.

9. Defendant SHELL USA, INC. f/k/a SHELL OIL COMPANY ("SHELL") is a corporation incorporated in Delaware. DTSC is informed and believes, and based on such information and belief alleges, that SHELL has its principal place of business in Houston, Texas. DTSC is further informed and believes, and based on such information and belief alleges, that SHELL "arranged for disposal or treatment … of hazardous substances," as set forth in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), at Montezuma Hills.

10. Defendant ATLANTIC RICHFIELD COMPANY ("ARCO") is a corporation incorporated in Delaware. DTSC is informed and believes, and based on such information and belief alleges, that ARCO has its principal place of business in Houston, Texas. DTSC is further informed and believes, and based on such information and belief alleges, that ARCO "arranged for disposal or treatment … of hazardous substances," as set forth in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), at Montezuma Hills.

11. Defendant BAYER CROPSCIENCE, INC. ("BAYER") is a corporation incorporated in New York. DTSC is informed and believes, and based on such information and belief alleges, that BAYER is the successor to Stauffer Chemical Company, which DTSC is informed and believes, and based on such information and belief alleges, "arranged for disposal or treatment … of hazardous substances," as those terms are defined in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), at Montezuma Hills.

12. Defendant THE DOW CHEMICAL COMPANY ("DOW") is a corporation incorporated in Delaware. DTSC is informed and believes, and based on such information and belief alleges, that DOW has its principal place of business in Midland, Michigan. DTSC is further informed and believes, and based on such information and belief alleges, that DOW "arranged for disposal or treatment … of hazardous substances," as set forth in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), at Montezuma Hills.

13. Defendant EXXON MOBIL CORPORATION ("EXXON") is a corporation incorporated in New Jersey. DTSC is informed and believes, and based on such information and belief alleges, that EXXON has its principal place of business in Spring, Texas. DTSC is further informed and believes, and based on such information and belief alleges, that EXXON "arranged

1  for disposal or treatment … of hazardous substances," as set forth in section 107(a) of CERCLA,
2  42 U.S.C. § 9607(a), at Montezuma Hills.

3  14. Defendant EXXONMOBIL OIL CORPORATION ("EXXONMOBIL OIL") is a
4  corporation incorporated in New York.  DTSC is informed and believes, and based on such
5  information and belief alleges, that EXXONMOBIL OIL has its principal place of business in
6  Spring, Texas.  DTSC is further informed and believes, and based on such information and belief
7  alleges, that EXXONMOBIL OIL "arranged for disposal or treatment … of hazardous
8  substances," as set forth in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), at Montezuma Hills.

9  15. Defendant EXXONMOBIL PIPELINE COMPANY LLC ("EXXONMOBIL
10 PIPELINE") is a limited liability company organized in Delaware.  DTSC is informed and
11 believes, and based on such information and belief alleges, that EXXONMOBIL PIPELINE has
12 its principal place of business in Spring, Texas.  DTSC is further informed and believes, and
13 based on such information and belief alleges, that EXXONMOBIL PIPELINE "arranged for
14 disposal or treatment … of hazardous substances," as set forth in section 107(a) of CERCLA, 42
15 U.S.C. § 9607(a), at Montezuma Hills.

16 16. Defendant FORD MOTOR COMPANY ("FORD") is a corporation incorporated in
17 Delaware.  DTSC is informed and believes, and based on such information and belief alleges, that
18 FORD has its principal place of business in Dearborn, Michigan.  DTSC is further informed and
19 believes, and based on such information and belief alleges, that FORD "arranged for disposal or
20 treatment … of hazardous substances," as set forth in section 107(a) of CERCLA, 42 U.S.C. §
21 9607(a), at Montezuma Hills.

22 17. Defendant GEORGIA-PACIFIC LLC ("GEORGIA-PACIFIC") is a limited liability
23 company organized Delaware.  DTSC is informed and believes, and based on such information
24 and belief alleges, that GEORGIA-PACIFIC has its principal place of business in Atlanta,
25 Georgia.  DTSC is further informed and believes, and based on such information and belief
26 alleges, that GEORGIA-PACIFIC "arranged for disposal or treatment … of hazardous
27 substances," as set forth in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), at Montezuma Hills.
28

18. Defendant HP INC. ("HP") is a corporation incorporated in Delaware. DTSC is informed and believes, and based on such information and belief alleges, that HP has its principal place of business in Palo Alto, California. DTSC is further informed and believes, and based on such information and belief alleges, that HP "arranged for disposal or treatment … of hazardous substances," as set forth in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), at Montezuma Hills.

19. Defendant MOBIL EXPLORATION AND PRODUCING NORTH AMERICA INC. ("MOBIL EXPLORATION") is a corporation incorporated in Nevada. DTSC is informed and believes, and based on such information and belief alleges, that MOBIL EXPLORATION has its principal place of business in Spring, Texas. DTSC is further informed and believes, and based on such information and belief alleges, that MOBIL EXPLORATION "arranged for disposal or treatment … of hazardous substances," as set forth in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), at Montezuma Hills

20. Defendant MOBIL PRODUCING TEXAS & NEW MEXICO INC. ("MOBIL PRODUCING") is a corporation incorporated in Delaware. DTSC is informed and believes, and based on such information and belief alleges, that MOBIL PRODUCING has its principal place of business in Spring, Texas. DTSC is further informed and believes, and based on such information and belief alleges, that MOBIL PRODUCING "arranged for disposal or treatment … of hazardous substances," as set forth in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), at Montezuma Hills.

21. Defendant PACIFIC GAS AND ELECTRIC COMPANY ("PGE") is a corporation incorporated in California. DTSC is informed and believes, and based on such information and belief alleges, that PGE has its principal place of business in Oakland, California. DTSC is further informed and believes, and based on such information and belief alleges, that PGE "arranged for disposal or treatment … of hazardous substances," as set forth in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), at Montezuma Hills.

22. Defendant THE PROCTOR & GAMBLE MANUFACTURING COMPANY ("PROCTER & GAMBLE") is a corporation incorporated in Ohio. DTSC is informed and believes, and based on such information and belief alleges, that PROCTOR & GAMBLE has its

principal place of business in Cincinnati, Ohio.  DTSC is further informed and believes, and based on such information and belief alleges, that PROCTER & GAMBLE "arranged for disposal or treatment … of hazardous substances," as set forth in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), at Montezuma Hills.

23. Defendant TEXACO DOWNSTREAM PROPERTIES INC. ("TDPI") is a corporation incorporated in Delaware.  DTSC is informed and believes, and based on such information and belief alleges, that TDPI has its principal place of business in San Ramon, California.  DTSC is further informed and believes, and based on such information and belief alleges, that TDPI "arranged for disposal or treatment … of hazardous substances," as set forth in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), at Montezuma Hills.

24. Defendant UNION OIL COMPANY OF CALIFORNIA ("UNION OIL") is a corporation incorporated in California.  DTSC is informed and believes, and based on such information and belief alleges, that UNION OIL has its principal place of business in San Ramon, California.  DTSC is further informed and believes, and based on such information and belief alleges, that UNION OIL "arranged for disposal or treatment … of hazardous substances," as set forth in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), at Montezuma Hills.

25. DTSC is informed and believes, and based on such information and belief alleges, that each Defendant knowingly arranged for the disposal of its hazardous substances in California.

**MONTEZUMA HILLS**

26. Montezuma Hills is a landfill approximately 156 acres in size located at 6292 Little Honker Bay Road, in an unincorporated part of Solano County, near the town of Rio Vista, California.

27. Montezuma Hills is identified by Assessor's Parcel Number 0048-050-340.  The waste management area of Montezuma Hills encompassed approximately 84 acres of the 156-acre property, of which approximately 52 acres were utilized for actual disposal operations.

28. From at least February 1979 to April 1986, an entity known as the IT Corporation owned and operated Montezuma Hills for purposes that included, without limitation, treating,

storing, and disposing of Class I and Class II hazardous wastes.  Montezuma Hills consisted of 12 waste management units (surface impoundments) for solar evaporation, material drying, and solids consolidation.  Hazardous substances disposed at Montezuma Hills included, without limitation:  (a) liquids, sludges, and solids from gas and oil exploration and production activities; and (b) wastes generated by the petroleum refining industry, including without limitation: drilling muds; fluids coincident to gas/oil exploration and production; brines; ballast waste; neutralized aqueous solutions of acidic or alkaline origin; wastewater treatment solids; and storm water runoff from areas used to handle all of these wastes.  Impacts to environmental media (*e.g.*, soil vapor, soil, surface water and groundwater) occurred during the management of the hazardous materials and/or wastes received at Montezuma Hills.

29.  After Montezuma Hills ceased accepting hazardous substances for treatment, storage, and disposal, the IT Corporation undertook formal closure activities and, on March 18, 1992, Montezuma Hills received closure certification.  Montezuma Hills transitioned to postclosure status pursuant to a "postclosure permit" approved by DTSC on January 31, 1998.  *See* Cal. Health & Safety Code §§ 25245-25248.  The postclosure permit was renewed on October 20, 2008.  A subsequent postclosure permit renewal application did not qualify for renewal because of inadequate financial assurances.

30.  The on-going, postclosure activities required at Montezuma Hills include, but are not limited to, onsite recovery and management of groundwater contaminated by past waste management activities, evaporation of the recovered groundwater in an onsite evaporation basin, long-term groundwater monitoring, routine inspections, maintenance and compliance activities, and water quality sampling and reporting.

31.  In 2002, IT Corporation (the former owner and operator of Montezuma Hills) filed for bankruptcy protection and, on May 1, 2004, the "IT Environmental Liquidating Trust" ("ITELT") was established to oversee the long-term post closure operation, maintenance, and upkeep of Montezuma Hills as part of the conclusion of the bankruptcy proceedings.  On May 1, 2004, ITELT became the owner and operator of Montezuma Hills.

32. A requirement applicable to Montezuma Hills is that the owner/operator–*i.e.*, ITELT– must obtain and maintain sufficient financial assurances that it can complete the required postclosure activities. *See* Cal. Health & Saf. Code § 25245(a)(2); Cal. Code Regs., tit. 22, § 66264.145(e)(3).

33. On February 29, 2016, DTSC determined that ITELT was in violation of the postclosure activities due to the underfunding of financial assurances for completion of the postclosure activities by an amount no less than $1,232,887.13.

34. On April 5, 2016, ITELT informed DTSC in writing that it had "no additional financial assets, or mechanisms in place, to meet the financial assurance obligations" required by California law.

35. In written correspondence dated July 28, 2016, DTSC notified ITELT that financial assurances for postclosure activities at Montezuma Hills was underfunded by $4,421,263 for a 30-year financial assurance period. This amount is periodically reassessed and financial assurances are renewed for another 30-year period to provide for long-term financial assurance for postclosure activities at Montezuma Hills. In this July 28, 2016 letter, DTSC determined – based on ITELT's April 5, 2016 letter – that ITELT would not be able to meet the financial assurance obligations for continued maintenance of the closed units, including the amount necessary for renewal of its permit to conduct the required postclosure activities.

36. On May 26, 2017, DTSC amended its original Imminent and Substantial Endangerment Determination and Order and Remedial Action Order (Docket Number: HSA-FY16/17-055), under the authority of Health and Safety Code sections 25358.3(a), 25355.5(a)(1)(B), 58009 and 58010. DTSC had initially issued that order on November 29, 2016. (References to the term "ISE Order" shall mean the May 26, 2017 amended order.) DTSC issued the ISE Order to address threatened releases of hazardous substances that would occur if Montezuma Hills is not adequately managed when existing funds are exhausted and a permanent remedy has not been implemented. The ISE Order named ITELT and a few generators [*i.e.*, "arrangers"], including the Defendants, or affiliates of Defendants, as respondents required to perform the work described in the ISE Order.

37. There have been "releases" of hazardous substances from Montezuma Hills, as defined in section 101(22) of CERCLA, 42 U.S.C. § 9601(22), which resulted in serious impacts to the environment (*e.g.*, air, soil, soil vapor, surface water, groundwater, or other media) and allowed exposure (*e.g.*, inhalation, dermal absorption, and ingestion) to human and ecological receptors on and off Montezuma Hills.  Further releases of hazardous substances from Montezuma Hills threaten to result in similar serious impacts to the environment and exposure to human and ecological receptors.

## FIRST CLAIM FOR RELIEF

**(Cost Recovery Claim Against All Defendants Pursuant to Section 107(a) of CERCLA)**

38. Plaintiffs re-allege and incorporate by reference the allegations in Paragraphs 1 through 37 above, as though fully set forth herein.

39. Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), provides in relevant part that any person who arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances at a facility from which there has been a release or a threatened release of a hazardous substance which results in the incurrence of response costs, shall be liable for all costs of removal or remedial action incurred by a State not inconsistent with the National Oil and Hazardous Substances Pollution Contingency Plan ("National Contingency Plan"), 40 C.F.R. Part 300.

40. Montezuma Hills, and the horizontal and vertical extent of the hazardous substance contamination caused by releases of hazardous substances from Montezuma Hills, including, without limitation, any area where any hazardous substance from Montezuma Hills has come to be located, is a "facility" within the meaning of section 101(9)(A) and (9)(B) of CERCLA, 42 U.S.C. §§ 9601(9)(A), 9601(9)(B).

41. Each Defendant is a "person" within the meaning of section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

42. Each Defendant arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances at Montezuma Hills.  Hazardous substances from Montezuma Hills have been released into the environment and there is a

continuing threat of additional hazardous substance releases from Montezuma Hills. These releases and threatened releases have resulted, and will continue to result, in Plaintiffs' incurrence of response costs. Each Defendant is liable to Plaintiffs for response costs Plaintiffs incurred at Montezuma Hills as a result of releases and threatened releases at Montezuma Hills, pursuant to section 107(a)(3) of CERCLA, 42, U.S.C. § 9607(a)(3).

43. The hazardous and solid wastes treated and/or disposed of at Montezuma Hills contained, without limitation, compounds that can migrate through groundwater, including, but not limited to, the following: 1-1-dichloroethane, 1,1-dichloroethene, cis-1,2-dichloroethene, trans-1,2-dichlororethene, 1,1-dichloropropene, benzene, chlorobenzene, trichloroethene, chloride, boron, chloroform, vinyl chloride, sulfate, and magnesium. These wastes, which are present at Montezuma Hills, contained "hazardous substances," which are defined in section 101(14) of CERCLA, 42 U.S.C. § 9601(14). There has been a "release" or threatened release of hazardous substances, including but not limited to, those included in this paragraph, from Montezuma Hills into the "environment," within the meaning of sections 101(8) and 101(22) of CERCLA, 42 U.S.C. §§ 9601(8) and 9601(22).

44. DTSC, in its capacity as an agency of the State of California, is considered a "State" for purposes of recovery of response costs under section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

45. Plaintiffs have incurred response costs not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300, resulting from the releases or threatened releases of hazardous substances at and from Montezuma Hills, within the meaning of section 101(25) of CERCLA, 42 U.S.C. § 9601(25). These response costs include, but are not limited to, costs to monitor, assess, evaluate and/or respond to the release and/or threatened release of hazardous substances at Montezuma Hills, as defined in Sections 101(23), (24) and (25) of CERCLA, 42 U.S.C. §§ 9601(23), (24) and (25). Plaintiffs are continuing to incur such costs, and Plaintiffs will continue to incur such costs in the future.

46. Each Defendant is jointly and severally liable, without regard to fault, pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for Plaintiffs' response costs resulting from the release or threat of release of hazardous substances from Montezuma Hills.

47. Pursuant to section 107(a) of CERCLA, Defendants are also liable for interest accrued on Plaintiffs' response costs.

**SECOND CLAIM FOR RELIEF**

**(Claim for Declaratory Relief Against all Defendants Pursuant to section 113(g)(2) of CERCLA)**

48. Plaintiffs re-allege and incorporate by reference the allegations of the preceding paragraphs 1 through 47 above, as though fully set forth herein.

49. Under section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), Plaintiffs are entitled to a declaratory judgment that each Defendant is jointly and severally liable to Plaintiffs for any response costs Plaintiffs have incurred, and for any further response costs Plaintiffs incur in the future, resulting from the releases and/or threatened releases from Montezuma Hills.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against all Defendants as follows:

1. For a judgment that each defendant is jointly and severally liable to Plaintiffs, without regard to fault, for all costs of response, removal, and remedial actions, including, but not limited to, oversight costs, incurred by Plaintiffs and resulting from release(s) and/or threatened release(s) of hazardous substances at, beneath, above, and/or from Montezuma Hills;

///

///

///

    2.    For a declaration that each defendant is jointly and severally liable to Plaintiffs, without regard to fault, for all future costs, including oversight costs, incurred by Plaintiffs as a result of any release(s) and/or threatened release(s) of hazardous substances at, beneath, above, and/or from Montezuma Hills;

    3.    For Plaintiffs' costs of suit;

    4.    For Plaintiffs' attorneys' fees;

    5.    For prejudgment interest; and

    6.    For such other and further relief as the court deems just and proper.

Dated:  August 24, 2023　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　ROB BONTA
　　　　　　　　　　　　　　　　　　　　　　　Attorney General of California
　　　　　　　　　　　　　　　　　　　　　　　SARAH E. MORRISON
　　　　　　　　　　　　　　　　　　　　　　　Supervising Deputy Attorney General

　　　　　　　　　　　　　　　　　　　　　　　*/s/ Kate M. Hammond*

　　　　　　　　　　　　　　　　　　　　　　　KATE M. HAMMOND
　　　　　　　　　　　　　　　　　　　　　　　Deputy Attorney General
　　　　　　　　　　　　　　　　　　　　　　　DONALD ROBINSON
　　　　　　　　　　　　　　　　　　　　　　　Deputy Attorney General
　　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiffs Department of Toxic Substances Control and the Toxic Substances Control Account*